**RECORD NO. 13-4751**

In The

# United States Court Of Appeals
## For The Fourth Circuit

## UNITED STATES OF AMERICA,

*Plaintiff – Appellee,*

v.

## LAVONTE LAMONT HALLMAN,

*Defendant – Appellant.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
AT CHARLOTTE**

_____

**BRIEF OF APPELLANT**

_____

**Haakon Thorsen
THORSEN LAW OFFICES
1235-E East Boulevard
Suite 239
Charlotte, NC 28203
(704) 333-0120**

*Counsel for Appellant*

# TABLE OF CONTENTS

**PAGE:**

TABLE OF AUTHORITIES ................................................................. iii

I.   STATEMENT OF SUBJECT MATTER AND APPELLATE
     JURISDICTION ....................................................................1

II.  STATEMENT OF ISSUES ........................................................1

III. STATEMENT OF CASE ...........................................................1

IV.  STATEMENT OF FACTS .........................................................3

V.   SUMMARY OF ARGUMENTS ..................................................5

VI.  ARGUMENT..........................................................................6

     A.   THERE WAS INSUFFICIENT EVIDENCE THAT THE
          ROBBERY AFFECTED INTERSTATE COMMERCE ....................6

          Standard of Review ..........................................................6

          Discussion of Issue .........................................................6

     B.   THE DISTRICT COURT ERRED IN DENYING
          DEFENDANT'S MOTION TO STRIKE THE
          INTRODUCTION FROM THE INDICTMENT ............................8

          Standard of Review ..........................................................8

          Discussion of Issue .........................................................8

     C.   THERE WAS NO FEDERAL JURISDICTION OVER THIS
          LOCAL CRIMINAL MATTER .............................................9

          Standard of Review ..........................................................9

          Discussion of Issue .........................................................9

D.     DEFENDANT HAS BEEN SUBJECTED TO CRUEL AND UNUSUAL PUNISHMENT BECAUSE HIS SENTENCE IS DISPORPORTIONATE TO THE SENTENCE THE STATE WOULD HAVE IMPOSED TO PUNISH THE ROBBERY............11

Standard of Review ...........................................................11

Discussion of Issue............................................................12

VIII.  CONCLUSION............................................................15

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**PAGE(S):**

**CASES:**

*Stirone v. United States,*
 361 U.S. 212, 80 S. Ct. 270,
 4 L. Ed. 2d 252 (1960)................................................................11

*United States v. Bailey,*
 990 F.2d 119 (4th Cir. 1993) .......................................................6

*United States v. Brantley,*
 777 F.2d 159 (4th Cir. 1985) ...................................................7, 11

*United States v. Buffy,*
 899 F.2d 1402 (4th Cir. 1990)..................................................9, 11

*United States v. Collins,*
 412 F.3d 515 (4th Cir. 2005) .......................................................6

*United States v. Kratsas,*
 45 F.3d 63 (4th Cir. 1995) ..........................................................11

*United States v Malloy,*
 568 F.3d 166 (4th Cir. 2009) ......................................................12

*United States v. Poore,*
 594 F.2d 39 (4th Cir. 1979) .......................................................8, 9

*United States v. Rivers,*
 595 F.3d 558 (4th Cir. 2010) ......................................................12

*United States v. Spagnolo,*
 546 F.2d 1117 (4th Cir. 1976) ......................................................7

*United States v. Ware,*
 230 Fed. Appx. 249 (4th Cir. 2007)...............................................7

**STATUTES:**

18 U.S.C. § 2 ................................................................................................2

18 U.S.C. § 922(g)(1) ....................................................................................2

18 U.S.C. § 924(c) .........................................................................................2

18 U.S.C. § 1951 ...................................................................................1, 2, 14

18 U.S.C. § 3231 ............................................................................................1

28 U.S.C. § 1291 ............................................................................................1

**RULE:**

Fed. R. Crim. P. 7(d) ..................................................................................2, 9

**CONSTITUTIONAL PROVISIONS:**

U.S. Const. Amend. VIII .................................................................11, 12, 13, 14

U.S. Const. Amend. X.........................................................................10, 13

U.S. Const. art I § 8 ......................................................................................10

U.S. Const. art III § 3 ...................................................................................10

**SENTENCING GUIDELINE:**

U.S.S.G. 4B1.1(c)(3) .....................................................................................2

**OTHER:**

John S. Baker, Jr., The Federalist Society for Law and Public
Policy Studies, "Measuring the Explosive Growth of Federal Crime
Legislation" ...................................................................................12

Cato Handbook for Congress, "The Expanding Federal Police Power" .................12

Michael J. Zydney Mannheimer, "Cruel and Unusual Federal
Punishments," 98 Iowa Law Review 69 (2012) .......................................13

Edwin Meese III, "Big Brother on the Beat: The Expanding
Federalization of Crime," Texas Review of Law and Politics,
Vol 1, No. 1 (1997) ..........................................................................12

Edwin Meese III, "The Dangerous Federalization of Crime,"
Hoover Digest 1999 No. 3 ..................................................................12

Michael McGrail, "The Hobbs Act After Lopez,"
41 B.C.L. Rev. 949 (2000)..................................................................14

"More Harm than Good: Assessing Federalization of Criminal Law"
79 Minnesota Law Review 455 (1994)............................................. 12-13

# I.  STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

This is a direct appeal by the defendant of his convictions in a federal criminal case.  Jurisdiction was conferred upon the United States District Court under 18 U.S.C. § 3231.  The defendant appeals from final orders of the District Court.  Appellate jurisdiction is conferred upon this Court pursuant to 28 U.S.C. § 1291.

# II.  STATEMENT OF ISSUES

A.  Was there sufficient evidence that the robbery affected interstate commerce?

B.  Did the court err in denying the defendant's motion to strike the introduction from the indictment?

C.  Was there federal jurisdiction over the robbery?

D.  Was the defendant subjected to cruel and unusual punishment?

# III.  STATEMENT OF CASE

Lavonte Lamont Hallman was indicted in the United States Court for the Western District of North Carolina on March 20, 2012: Count One charged Mr. Hallman and Ron Demetrius Campbell with conspiring with each other to obstruct, delay and affect commerce and the movement of articles and commodities in commerce by robbery of an O'Reilly auto parts store in which United States currency was taken, in violation of 18 U.S.C. § 1951; Count Two charged Mr.

1

Hallman and Mr. Campbell with obstructing, delaying, and affecting commerce and the movement of articles and commodities in commerce by robbery in which United States currency was taken belonging to O'Reilly Auto Parts, in violation of 18 U.S.C. §§ 1951 and 2; Count Three charged Mr. Hallman and Mr. Campbell with aiding and abetting each other by possession of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. §§ 924(c) and 2; Count Four charged Mr. Hallman with possession of a firearm and ammunition in and affecting interstate commerce after having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1).  (J.A. 10-12).

Mr. Hallman moved to dismiss the indictment claiming there was no federal jurisdiction over the alleged crimes.  (J.A. 13-21).  The motion was denied without hearing.  (J.A. 44).

Mr. Hallman moved to strike the introduction to the indictment pursuant to Federal Rule of Criminal Procedure 7(d) because it contained factual assertions to which he had not stipulated.  (J.A. 29-30).  This motion was denied without hearing.  (J.A. 37-38).

After trial, Mr. Hallman was convicted on all counts.  (J.A. 544-47).

The presentence report applied career offender enhancements pursuant to U.S.S.G. 4B1.1(c)(3) and found the guideline range was 360 months to life.  (J.A. 632-651).  At sentencing, the Court adopted the presentence report without change.

(J.A. 652). The Court granted the defense motion for a sentence outside the advisory guideline system to which the government objected, and also imposed a sentence outside the advisory guideline system for other reasons. (J.A. 654). The Court ordered Mr. Hallman be imprisoned 210 months on counts 1 and 2 concurrent and 84 months consecutive on count 3 and 36 mounts concurrent on count 4 for a total term of 294 months. (J.A. 621-27).

Judgment was filed September 25, 2013. (J.A. 621-27). Mr. Hallman filed notice of appeal on October 4, 2013. (J.A. 628). This Court extended time to file the opening brief and appendix until February 21, 2014.

## IV. STATEMENT OF FACTS

At trial, one of the three Assistant United States Attorneys prosecuting the case for the United States government began presentation of evidence by reading a stipulation that Lavonte Hallman had a prior felony conviction. (J.A. 66-68).

David Farmer was the first witness, and he testified he was working as assistant manager at the O'Reilly Auto Parts store at 6505 Statesville Road in Charlotte, North Carolina on December 26, 2011 with Rodney Bakken when the store was robbed. (J.A. 70-72, 77). There are over 3,000 O'Reilly Auto Parts stores in over 30 states and they were all owned by O'Reilly Automotive, Incorporated which was publically traded on the NASDAQ exchange. (J.A. 71-72). The stores sell auto parts, supplies, and equipment. (J.A. 72-73). Mr. Farmer

testified that his responsibilities as assistant manager included ordering parts and merchandise from a warehouse in Georgia; he said some of the parts sold at the store were manufactured overseas and distributed through companies in other states. (J.A. 73-77).

Mr. Farmer was working the evening shift on December 26, 2011. The store was due to close at 9:00 p.m. and at 7:30 p.m. someone entered the store with a gun demanding money from the cash register. (J.A. 78). Mr. Farmer was able to get a decent look at the man despite his efforts to hide his face and identified Mr. Hallman as the robber. (J.A. 80). After Mr. Hallman took around $300 from the cash registers, he left. (J.A. 100). Mr. Farmer followed him out the door and saw him get into a Mercury Grand Marquis. (J.A. 85-88).

Mr. Farmer testified the robbery did not cause the store to any change to orders from suppliers. (J.A. 109). Only $336.00 was taken and it was recovered later that night. (J.A. 100).

Rodney Bakken testified that when he was working at O'Reilly's the night of December 26, 2011 a person came through the door wearing a hood with something over his face and told the employees they had 10 seconds to open the cash drawers and began counting down. (J.A. 111). Mr. Bakken gave the man the money out of the cash register drawers and called 911 after the man left. (J.A. 112-14). He described being taken to a show-up later that night and being able to

4

say that one of the two men shown to him was the same height, build, and wearing the same kind of clothes.  (J.A. 121).

North Carolina Highway Patrol Trooper Brandon Jolly described how he learned of the armed robbery at the auto parts store and stopped the Mercury Grand Marquis almost immediately after the robbery was completed.  (J.A. 123-29).  He described how Mr. Hallman ran from the vehicle and had to be subdued with a taser.  (J.A. 130-40).

Charlotte Mecklenburg Police Officer Emily Acker-Estes testified that she was the K-9 officer who found the money in the area Mr. Hallman was subdued with a taser.  (J.A. 156-61).  Various other witnesses were called who provided evidence an armed robbery occurred.  No additional evidence was offered of effect on interstate commerce.

## V.    SUMMARY OF ARGUMENTS

A.    There is insufficient evidence of an effect on interstate commerce when a robber of a neighborhood auto parts store takes only $336.00, the robber was arrested instantly and the money recovered, no evidence was presented the store lost any business, and the assistant manager testifies the robbery did not cause the store to change any of its orders from suppliers.

B.    The district court erred in denying defendant's motion to strike the introduction to the indictment because it contained facts to which defendant did not stipulate and lessened the government's burden at trial.

C.    Since no effect on interstate commerce was shown, there was no federal jurisdiction over the robbery at the neighborhood merchant.

D.    The Eighth Amendment protection against cruel and unusual punishment should prevent the United States from imposing a punishment disproportionate to the punishment the State of North Carolina would impose for the robbery.

## VI.    ARGUMENT

### A.    THERE WAS INSUFFICENT EVIDENCE THAT THE ROBBERY AFFECTED INTERSTATE COMMERCE

Standard of Review

When reviewing for the sufficiency of evidence, this court views the evidence in the light most favorable to the government and makes all reasonable inferences therefrom.  *United States v. Collins,* 412 F.3d 515, 519 (4th Cir. 2005).

Discussion of Issue

There are two essential elements of a Hobbs Act conviction: interference with interstate commerce, and a crime of robbery, extortion, or violence.  *United States v. Bailey,* 990 F.2d 119, 125 (4th Cir. 1993).  Evidence of interference with

6

interstate commerce is required. Although the effect can be minimal, the government is required to provide "proof of a reasonably probable effect on commerce" as a result of the robbery. *United States v. Spagnolo,* 546 F.2d 1117, 1118-19 (4th Cir. 1976). Here there was absolutely no interference with interstate commerce, and no probable effect. Zero. None. Lavonte Hallman used a gun to rob a neighborhood auto parts store of $336.00. He was apprehended by a State Trooper almost immediately and the money was recovered. There was no depletion of the store's assets. The assistant manager of the store testified that the robbery did not cause the store to change any of it orders from suppliers. Yes, a robbery occurred at a business that sells goods that have moved in interstate commerce. But the robbery did not have any effect on the movement of goods in interstate commerce.

Mr. Hallman acknowledges that the effect on interstate commerce does not have to be substantial, but it has to be real. *United States v. Ware,* 230 Fed. Appx. 249 (4th Cir. 2007). Since absolutely zero effect on interstate commerce was shown, not even a minimal effect, this court should reverse Mr. Hallman's convictions in Counts One and Two. *United States v. Brantley*, 777 F.2d 159 (1985).

**B.    THE DISTRICT COURT ERRED IN DENYING DEFENDANT'S MOTION TO STRIKE THE INTRODUCTION FROM THE INDICTMENT**

<u>Standard of Review</u>

An appellate court, in determining whether a district court erred in refusing to strike language from an indictment, reviews the district court's decision for abuse of discretion. *United States v. Poore,* 594 F.2d 39, 41 (4th Cir. 1979).

<u>Discussion of Issue</u>

Mr. Hallman moved to strike the introduction from the indictment, arguing that it contained factual assertions to which he had not stipulated and relieved the government from having to prove essential facts. (J.A. 29). The introduction to the indictment states: "At all times material to this Bill of Indictment, O'Reilly Automotive, Inc. (doing business and hereinafter referred to as "O'Reilly Auto Parts") was a business engaged in commercial activities in the Western District of North Carolina and elsewhere, in and affecting commerce. . . . The O'Reilly Auto Parts store located at 6505 Old Statesville Road in Charlotte, North Carolina is in the business of selling merchandise in and affecting commerce." (J.A. 10.)

As noted above, the government had absolutely no evidence the robbery affected interstate commerce: there was no depletion of assets and the assistant manager testified the robbery did not affect orders from suppliers. There was no evidence the store had to shut down for any length of time or lost any business.

8

But the introduction to the indictment relieved the government from having to prove any effect on commerce. It asserts O'Reilly Auto Parts by its very existence as a business affected commerce. For there to be a violation of the Hobbs Act, it is the robbery which must affect commerce. Mr. Hallman was denied due process when the court denied his motion to strike language from the indictment. *United States v. Poore,* 594 F.2d 39. 43 (1979); *see also* Fed. R. Crim. P. 7(d). He deserves a new trial.

### C. THERE WAS NO FEDERAL JURISDICTION OVER THIS LOCAL CRIMINAL MATTER

<u>Standard of Review</u>

"The question of whether a defendant's acts satisfy the jurisdictional predicate of the Hobbs Act is one of law." *United States v. Buffy,* 899 F.2d 1402, 1407 (4th Cir. 1990). Review is *de novo*. *Id.*

<u>Discussion of Issue</u>

There must be evidence that interstate commerce was affected for there to be federal jurisdiction over the robbery at the neighborhood auto parts store. The case raises issues no different than robberies of local merchants at the time of the American Revolution. An Article III United States District Court Judge should not have heard this local criminal matter. Such robberies are local issues which, under the Constitution of the United States, are to be regulated by North Carolina law. North Carolinians have trusted our local governments to deal with robbers since

before there was a United States of America. The sovereign State of North Carolina never ceded the power to decide how to deal with our local criminals to Washington. Criminal law enforcement in this matter was undertaken through the Honorable Andrew Murray, the locally elected District Attorney for Mecklenburg County. The State of North Carolina was actively prosecuting the case before federal adoption.

The founders were explicit that ordinary criminal matters were issues for the states alone. The United States Constitution guarantees that such matters remain issues for the states alone. The Constitution gives the United States Congress jurisdiction over only five types of criminal conduct: treason, counterfeiting, committing crimes on federal property, piracy on the high seas, and offense against the law of nations. U.S. Const. art I § 8 and art III § 3. Robbery and possession of a firearm are not conduct included in the enumerated and specifically limited jurisdiction of the United States Congress. The Bill of Rights specifically reserved to the States all power not enumerated to the federal government. U.S. Const. Amend. X. As noted by the Cato Institute:

> Even the *Federalist Papers*, which were, after all, a series of arguments for increased federal power, made it clear that criminal law enforcement would fall outside the federal sphere under the new Constitution. James Madison wrote that federal powers "will be exercised principally on external objects, as war, peace, negotiation, and foreign commerce . . . . The powers reserved to the several states will extend to all objects which, in the ordinary course of affairs, concern the lives, liberties, and property of the people, and the internal

10

order, improvement, and prosperity of the state." Likewise, Alexander Hamilton, the most famous nationalist of his era, explained that state governments, not the federal government, would have the power of law enforcement, and that power would play a major role in ensuring that the states were not overwhelmed by the federal government: "There is one transcendent advantage belonging to the province of the State governments, which alone suffices to place the matter in a clear and satisfactory light—I mean the ordinary administration of criminal and civil justice."

The Federal Government has jurisdiction over a robbery only if it interferes with interstate commerce. *Stirone v. United States,* 361 U.S. 212, 218, 80 S. Ct. 270, 4 L. Ed. 2d 252 (1960). "[W]e are still a federal, not a unitary, government and, to satisfy the [Hobbs] Act, the government must show an effect on interstate commerce is reasonably probable." *United States v. Buffy,* 899 F.2d 1402, 1404 (4th Cir. 1990) *(reversing for lack of jurisdiction when government did not show an effect on interstate commerce).* Since no effect on interstate commerce was shown, the court lacked jurisdiction. This court should reverse Mr. Hallman's conviction in Counts One and Two. *United States v. Brantley,* 777 F.2d 159 (4th Cir. 1985).

### D.  DEFENDANT HAS BEEN SUBJECTED TO CRUEL AND UNUSUAL PUNISHMENT BECAUSE HIS SENTENCE IS DISPORPORTIONATE TO THE SENTENCE THE STATE WOULD HAVE IMPOSED TO PUNISH THE ROBBERY

Standard of Review

Review of the constitutionality of a sentence under the Eighth Amendment is *de novo*. *United States v. Kratsas,* 45 F.3d 63, 65 (4th Cir. 1995).

11

Discussion of Issue

Mr. Hallman acknowledges that his argument is contrary to Eighth Amendment jurisprudence. This court has stated Eighth Amendment proportionality review "is not available for any sentence less than life imprisonment without the possibility of parole. *United States v Malloy,* 568 F.3d 166, 180 (4th Cir. 2009). Mr. Hallman is aware that a panel of this court cannot overrule the precedent set by a prior panel of this court; only the Supreme Court or this court sitting *en banc* can do that. *United States v. Rivers,* 595 F.3d 558, 564 n.3 (4th Cir. 2010). Mr. Hallman contends established jurisprudence fails to afford him the guarantee of the Eighth Amendment set out in the Bill of Rights: to not have the federal government punish his crime greater than the punishment the state would have imposed. He wishes to preserve this argument.

At the time our Constitution was drafted, crime fighting was the sole responsibility of state and local government. *See generally*: Cato Handbook for Congress, "The Expanding Federal Police Power;" John S. Baker, Jr. The Federalist Society for Law and Public Policy Studies, "Measuring the Explosive Growth of Federal Crime Legislation;" Edwin Meese III, "The Dangerous Federalization of Crime," Hoover Digest 1999 No. 3; Edwin Meese III, "Big Brother on the Beat: The Expanding Federalization of Crime," Texas Review of Law and Politics, Vol 1, No. 1 (1997); "More Harm than Good: Assessing

Federalization of Criminal Law" 79 Minnesota Law Review 455 (1994). The Constitution granted only limited criminal law enforcement powers to the federal government. The Tenth Amendment reserved to the states all powers not granted the federal government. As a consequence states have been responsible for punishing most criminal offenses. When the federal government adopts a case actively being prosecuted by a state, the Cruel and Unusual Punishment clause of the Eight Amendment prohibits disproportionate punishment. A history of the ratification of the Eighth Amendment "evidences a design to limit the power of the federal government to punish criminals to the same extent that the States have limited their own power to punish." Michael J. Zydney Mannheimer, "Cruel and Unusual Federal Punishments," 98 Iowa Law Review 69 (2012). That is to say, whether a federal punishment for a crime is "cruel and unusual" can be answered only in reference to the punishment for the same offense meted out by the States. *Id.*

In this case, we have an <u>exact</u> measure of the punishment the State of North Carolina would mete out for Hallman's offense since the District Attorney had made a plea offer. The State of North Carolina felt that if Mr. Hallman pleaded guilty to Robbery with a Dangerous Weapon, other charges would be dismissed and his would receive "punishment in the middle of the presumptive range---an active sentence of 78 to 106 months in custody." North Carolina prosecutes almost

13

all auto store robberies that occur in the State of North Carolina. As the District Court found, this case lies outside of the heartland of Hobbs Act prosecutions. Unlike Mr. Hallman's crime, the heartland of activity being punished under the Hobbs Act involve organized crime, gang activity, and complex racketeering schemes. The Hobbs Act, a 1946 amendment to the Anti-Racketeering Act of 1934, was, like the 1934 act, an attempt by Congress to eliminate racketeering by organized crime in the Teamsters and other unions, which was having a direct and visible effect on interstate commerce. *See generally* Michael McGrail, "The Hobbs Act After Lopez," 41 B.C.L. Rev. 949 (2000). Lavonte Hallman was not a mafia crime boss, interfering with unions. This case is so far outside of the heartland of Hobbs Act prosecutions, he should be punished as North Carolina would have punished him. According to the United States Attorneys' Manual, "[t]he robbery offense in 18 U.S.C. § 1951 is to be utilized, as a general rule, only in instances involving organized crime, gang activity, or wide-ranging schemes." Mr. Hallman's sentence of 294 months is disproportionate to the sentence the State of North Carolina would have imposed for the robbery of the local merchant. Although a panel of this court cannot reverse Mr. Hallman's sentence as in violation of the Eighth Amendment, the court should find that the Eighth Amendment guarantees that the United States government cannot sentence Mr.

Hallman disproportionately to the sentence the State of North Carolina would have imposed.

## VIII. CONCLUSION

Because the government failed to provide evidence of an effect on interstate commerce, this Court should reverse defendant's convictions in Counts One and Two.  Because the District Court erred in denying defendant's motion to strike a portion of the indictment and this prejudiced defendant, the Court should reverse and remand for new trial.  The sentence imposed was disproportionate to the sentence the State of North Carolina would have imposed and therefore in violation of the protection against cruel and unusual punishment.

Respectfully submitted,

/s/ Haakon Thorsen
Haakon Thorsen
THORSEN LAW OFFICES
1235-E East Boulevard
Suite 239
Charlotte, NC  28203
(704) 333-0120

*Counsel for Appellant*

**CERTIFICATE OF COMPLIANCE WITH RULE 32(a)**
**Certificate of Compliance with Type-Volume Limitation,**
**Typeface Requirements, and Type Style Requirements**

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

        this brief contains <u>3,285</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

        this brief has been prepared in a proportional spaced typeface using <u>Microsoft Word</u> in <u>14 point Times New Roman</u>.

<u>/s/ Haakon Thorsen</u>
Haakon Thorsen

Dated: February 10, 2014

# CERTIFICATE OF FILING AND SERVICE

I hereby certify that on February 10, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Amy E. Ray
OFFICE OF THE
UNITED STATES ATTORNEY
United States Courthouse
100 Otis Street, Room 233
Asheville, NC 28801
(828) 271-4661

*Counsel for Appellee*

The necessary filing and service were performed in accordance with the instructions given to me by counsel in this case.

/s/ Karen R. Taylor
Karen R. Taylor
GIBSON MOORE APPELLATE SERVICES, LLC
421 East Franklin Street
Suite 230
Richmond, VA  23219